# IN THE UNITED STATES DISTRICT COURT FOR MARYLAND

KAREN J. BLANK                                     *
16409 Mt. Savage Road NW                           *
Mt. Savage, MD 21545                               *
                                                   *
        Plantiff                        *
                                                   *
   vs.                                          *    Case No. _____
                                                   *
TIMBROOK PONTIAC-CADILLAC-NISSAN, INC.             *
Route 36, Corriaganville Rd                        *
Cumberland, MD 21502                               *
                                                   *
     Serve:                                 *
                                                   *
         H. Gregory Skidmore, ESQ.           *
         100 South Liberty Street             *
         Cumberland, MD 21502                 *
                                                   *
     and                                    *
                                                   *
GENERAL MOTORS ACCEPTANCE CORPORATION              *
3044 W. Grand Blvd.                                *
Detroit, MI 48202                                  *
                                                   *
     Serve:                                 *
                                                   *
         The Corporation Trust Incorporated   *
         300 E Lombard St                     *
         Baltimore, MD 21202                  *
                                                   *
    Defendants                              *

## COMPLAINT

Plaintiff Karen J. Blank, by and through counsel, brings this action against Timbrook

Pontiac-Cadillac-Nissan, Inc. and General Motors Acceptance Corporation on the following

grounds.

**Jurisdiction**

1.      Jurisdiction is based on the Fair Credit Reporting Act, 15 U.S.C. §1681p and the

Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d).  The amount in controversy exceeds

$50,000.00.

**Parties and Venue**

2.      Plaintiff Karen Blank is a resident of Mt. Savage, Maryland.  She is a "consumer" within

the meaning of the Fair Credit Reporting Act, 15 U.S.C. §1681a(c), the Magnuson-Moss

Warranty Act, 15 U.S.C. §2301(3) and the Maryland Consumer Protection Act, Md. Code

Ann., Comm. Law §13-101(c).

3.      Defendant Timbrook Pontiac-Cadillac-Nissan, Inc. ("Timbrook") is a corporation

incorporated under the laws of Maryland and whose principal place of business is located

in Allegheny County, Maryland.  Timbrook is a "warrantor" under the Magnuson-Moss

Warranty Act, 15 U.S.C. §2301(5) and "merchant" within the meaning of the Maryland

Consumer Protection Act, Md. Code Ann., Comm. Law §13-101(g).

4.      Defendant General Motors Acceptance Corporation ("GMAC") is a corporation which

regularly conducts business in Allegheny County and throughout the state of Maryland.  It

is a "furnisher" of information to credit reporting agencies within the meaning of the Fair

Credit Reporting Act, 15 U.S.C. §1681s-2.

**Statement of Facts**

5.      On or about May 30, 2002, Plaintiff Blank purchased from Timbrook for personal,

household and family use what Timbrook represented to her as a new 2002 Pontiac Grand

Prix, VIN: 1G2WP52K02F110438.

6.      Prior to Plaintiff's purchase and unknown to Plaintiff when she bought the new car, the car in question had sustained major front-end collision damage, including frame damage. Timbrook literally concealed this damage from Plaintiff by making cosmetic and other repairs to the car prior to her purchase.  In the course of attempting to repair the undisclosed damage, unbeknownst to Plaintiff, Timbrook replaced, repaired and/or repainted major parts, including the frame. Timbrook undertook these major repairs in its own shop yet sold the car to Plaintiff as a new, undamaged car, without disclosing the prior major collision and frame damage. These were material facts which Maryland law required Timbrook to disclose.

7.      On information and belief, Plaintiff avers that Timbrook itself and each Timbrook employee involved in the sale of the car to Plaintiff had actual knowledge of the vehicle's prior collision damage but Timbrook deliberately, knowingly and willfully concealed this information from Plaintiff.

8.      If Plaintiff had been informed of or known of the damage to the car, she would not have purchased it.

9.      When purchasing the car, Plaintiff entered into a vehicle sales contract and a Retail Instalment Sale Contract with Defendant Timbrook.  Copies are attached to this Complaint as Exhibits A and B, respectively.  Timbrook assigned and sold the retail installment contract to Defendant GMAC, which accepted monthly payments from Plaintiff under the installment contract.

10.     The installment contract contains the following provision:

**NOTICE: ANY HOLDER OF THIS
CONSUMER CREDIT CONTRACT IS
SUBJECT TO ALL CLAIMS AND DEFENSES
WHICH THE DEBTOR COULD ASSERT
AGAINST THE SELLER OF GOODS OR
SERVICES OBTAINED PURSUANT HERETO
OR WITH THE PROCEEDS HEREOF.
RECOVERY HEREUNDER BY THE DEBTOR
SHALL NOT EXCEED AMOUNTS PAID BY
THE DEBTOR HEREUNDER.**

Through this Complaint, Plaintiff asserts against GMAC all claims and defenses which she has against Timbrook.  She also brings a direct claim against GMAC under the Fair Credit Reporting Act.

11.     On information and belief, Plaintiff avers that on the date of sale, the car was unmerchantable because the vehicle contained defects as Timbrook received it from the factory, and/or because Timbrook failed to repair the car properly following the accident which occurred prior to her purchase.  Thereafter, on January 22, 2004, Plaintiff was driving the car with due care when without warning and due to the car's defects, the car swerved uncontrollably across the road into a roadside drainage culvert, injuring the Plaintiff.  Despite immediate diligent efforts commenced as soon as the car began to swerve, Plaintiff was unable to control the car due to its defects.

12.     The car was towed to Timbrook and inspected by personnel from both Timbrook and General Motors Corporation ("GM").  Timbrook subsequently undertook to repair the car but Timbrook and GM informed Plaintiff they were unable to identify what caused the January 24, 2004 accident.  Timbrook and GM were unable to explain why the car had swerved uncontrollably or why it could not be controlled.  Timbrook and GM were

4

unable to provide Plaintiff with any credible assurance that the car was safe to drive, that the steering would not lock up on her again, that the brakes would not fail again or that the air bag – which failed to deploy in Plaintiff's incident – would work in the event of a subsequent accident. GM refused to provide Plaintiff with a copy of its investigator's report, a report it had assured Plaintiff it would provide prior to conducting its investigation. Without a copy of the GM investigator's report or assurances from Timbrook or GM that the car's defects had been diagnosed and repaired, Plaintiff was unwilling to drive the car or accept its return. Plaintiff notified GMAC that because the car was unsafe to drive, she would not accept return of the car and would not make further payments under her credit contract, effectively exercising her rights under Md. Code Ann., Comm. Law §2-717 to deduct her damages from the balance of the purchase price due under the contract.

13.   Plaintiff came to the dealership intending to retrieve the tags to the car. She then learned for the first time that her car had sustained extensive damage prior to her purchase. Upon learning of the accident damage, she requested an explanation for why she was not so informed. No explanation was forthcoming. Plaintiff removed her tags and left the car at the dealership.

14.   Within a short time thereafter, Plaintiff had a conversation with the manager at Timbrook who sold her the car and handled the paperwork closing the deal. In that conversation, Plaintiff expressed her dismay and surprise that she had been sold a wrecked car and asked for another car or her money back. The Timbrook manager would only say he did not know the car had been wrecked. Timbrook declined to provide Plaintiff with a new

car or a refund.

15.     GMAC declined to recognize that Plaintiff had a right to deduct her damages from the

sums that remained due on the contract and refused to release Plaintiff from the contract.

Instead, it treated the matter as a repossession and mis-reported Plaintiff's voluntary

surrender of the car and principled refusal to pay as a repossession to credit reporting

agencies.  Thereafter, GMAC also reported additional derogatory information to credit

bureaus regarding Plaintiff's credit account, without advising credit bureaus of the

reasons for Plaintiff's refusal to pay, causing damage to Plaintiff's credit and causing

Plaintiff to suffer damages.  GMAC sold Plaintiff's car and demanded payment of the

deficiency balance which it said remained after application of the proceeds of sale.

GMAC did not file a legal action seeking a deficiency under the installment contract;

instead, GMAC reported derogatory information to credit reporting agencies regarding

Plaintiff's account and notified the Internal Revenue Service that it had canceled the

alleged $8,335.54 debt.  GMAC notified Plaintiff she is expected to report the canceled

amount as income on her tax return.  When Plaintiff wrote GMAC to rectify this matter,

GMAC ignored her letter.

16.     When Plaintiff became aware that GMAC was reporting derogatory information to credit

reporting agencies, she requested that the credit reporting agencies re-investigate the

manner in which GMAC was reporting her account.  In violation of its duties under the

Fair Credit Reporting Act, GMAC verified to Equifax and Experien that the Plaintiff's

account was being reported correctly.  This reporting, and GMAC's refusal to correct its

reporting of Plaintiff's account, damaged Plaintiff.

6

17.     As a result of the acts and omissions of Timbrook as set forth in this Complaint, Plaintiff

        was tricked into purchasing a car she otherwise would not have purchased, paid far more

        for the car than it was worth, incurred finance charges on the amount by which she was

        overcharged, was induced to drive the car believing it was a new, safe and undamaged

        car, suffered the January, 2004 accident in which she sustained personal injuries and

        which caused her to incur medical expenses, sustained incidental and consequential

        damages, was denied a refund or new car and sustained other losses and damages.

18.     As a result of GMAC's acts and omissions as set forth in this Complaint, Plaintiff

        suffered and continues to suffer financial loss, was greatly distressed, embarrassed,

        anxious and frustrated by GMAC's continued mis-reporting of her account to credit

        reporting agencies, and Plaintiff sustained other losses and damages.

## COUNT ONE
_____(Deceit by Non-disclosure or Concealment)

19.     Plaintiff incorporates herein by reference as though fully set forth the allegations in

        paragraphs 1 through 18 of this Complaint.

20.     Timbrook had a duty to disclose to Plaintiff the fact that the vehicle had sustained

        extensive wreck and frame damage in an accident prior to the date of sale, but Timbrook

        intentionally concealed from Plaintiff these facts which it had a duty to disclose.

21.     Timbrook intended to induce the Plaintiff to act differently than she would have acted had

        she known the true facts.

22.     Because of Timbrook's concealment of the aforesaid material facts, Plaintiff acted in a

        manner different from how she would have acted had Plaintiff known that the vehicle had

previously been significantly damaged.  Had Plaintiff known the vehicle previously had

been significantly damaged, she would not have purchased the vehicle.

23.     As a result of Timbrook's concealment of the aforesaid material facts, Plaintiff sustained

the losses and damages set forth above.

24.     Timbrook's sale of the vehicle to Plaintiff, without disclosure of its prior extensive

accident and frame damage, was motivated by Timbrook's actual malice toward Plaintiff,

for Timbrook intended to and did injure Plaintiff by tricking her into purchasing the

vehicle and paying more for the vehicle than it would have been worth had Timbrook

complied with Maryland law by disclosing the vehicle's prior extensive wreck damage.

WHEREFORE, Plaintiff demands judgment against Timbrook and GMAC, jointly and

severally, for compensatory damages of SEVENTY THOUSAND DOLLARS ($70,000.00), for

punitive damages against Timbrook in such amount as a jury deems necessary to punish and

deter Timbrook and other motor vehicle dealers from engaging in like conduct, and for interest,

costs and reasonable attorneys fees.

## COUNT TWO
(Revocation of Acceptance)

25.     Plaintiff incorporates herein by reference as though fully set forth the allegations in

paragraphs 1 through 24 of this Complaint.

26.     Through a conversation with Timbrook's manager in or about March, 2004, Plaintiff

revoked her acceptance of the car under Md. Code Ann., Comm. Law §2-608 because of

the prior extensive collision damage which had not been disclosed, because she was not

given a copy of the GM investigator's report, because defects in the vehicle caused the

8

January 24, 2004 accident, because no-one could identify and remedy those defects and because no-one could provide her with reasonable assurances that the vehicle was safe to drive, all as set forth above in greater detail.

27.   Timbrook has failed and refused to honor Plaintiff's revocation of acceptance, as a direct and proximate result of which Plaintiff sustained the losses and damages set forth above.

WHEREFORE, Plaintiff demands judgment against Timbrook and GMAC, jointly and severally, for compensatory damages in the amount of SEVENTY THOUSAND DOLLARS ($70,000.00), plus interest and costs.

## COUNT THREE

_____(Breach of Implied Warranty of Merchantability)

28.   Plaintiff incorporates herein by reference as though fully set forth the allegations in paragraphs 1 through 27 of this Complaint.

29.   Nonconformities in the vehicle sold to Plaintiff rendered it unmerchantable, not fit for the ordinary purposes for which such vehicles are used, and unable to pass without objection in the trade under the contract description, in violation of §2-314(2)(a) and (c) of the Commercial Law Article of the Maryland Code.   Specifically, on the date of sale, the car was unsafe and not fit for ordinary purposes as it either contained defects when delivered to Timbrook from the factory or was not fully and properly repaired by Timbrook following the accident which Timbrook did not disclose to Plaintiff.   The vehicle also would not pass without objection in the trade under the contract description because the contract description failed to include or disclose the prior wreck and frame damage, as required by law.

30.    As a result of Timbrook's breaches of the implied warranty of merchantability arising

under Maryland law, Plaintiff sustained the losses and damages set forth above.

WHEREFORE, Plaintiff demands judgment against Timbrook and GMAC, jointly and

severally, for compensatory damages of SEVENTY THOUSAND DOLLARS ($70,000.00), plus

interest and costs.

### COUNT FOUR
(Magnuson-Moss Warranty Act)

31.    Plaintiff incorporates herein by reference as though fully set forth the allegations in

paragraphs 1 through 30 of this Complaint.

32.    Timbrook's breach of the implied warranty of merchantability violates the Magnuson-

Moss Warranty Act, 15 U.S.C. Section 2301 *et seq.*, including 15 U.S.C. Section 2310(d).

33.    As a result of Timbrook's violation of the Magnuson-Moss Warranty Act, Plaintiff

sustained the damages and losses set forth above.

WHEREFORE, Plaintiff demands judgment against Timbrook and GMAC, jointly and

severally, for compensatory damages in the amount of SEVENTY THOUSAND DOLLARS

($70,000.00), plus interest, costs and reasonable counsel fees.

### COUNT FIVE
(Retail Installment Sales Act)

34.    Plaintiff incorporates herein by reference as though fully set forth the allegations in

paragraphs 1 through 33 of this Complaint.

35.    Timbrook prepared the Instalment Sales Contract attached to this Complaint as Exhibit B.

Although Plaintiff did not realize so at the time, Timbrook failed to sign Plaintiff's copy

of the Instalment Sales Contract and failed to provide her with a signed copy of that

contract on that date or at any other time.

36.     The Maryland Retail Installment Sales Act, which governs Plaintiff's Instalment Sales

        Contract with Timbrook, affords Plaintiff an unconditional right to cancel the contract

        and obtain return of all payments and deposits made in connection with that contract upon

        making demand for same at any time prior to being provided with a copy of the contract

        signed by the dealer.  Md. Code Ann., Comm. Law §12-605(a) and (b).

37.     By letter dated February 23, 2005, Plaintiff exercised her right under the Maryland Retail

        Installment Sales Act to cancel the contract and demand a refund.  A copy is attached as

        Exhibit C.

38.     In violation of the Retail Installment Sales Act, Md. Comm. Code Ann. §12-605,

        Timbrook has failed and refused to cancel the contract and provide Plaintiff with a refund

        of funds it received in connection with the installment sales contract.

        WHEREFORE, Plaintiff prays that this Court require that Timbrook cancel the contract

and refund to her all funds it received in connection with her installment sales contract, less a

credit for the sum obtained by GMAC upon sale of the car; Plaintiff further requests an award of

pre-judgment and post-judgment interest, together with costs.

### COUNT SIX
(Consumer Protection Act)

39.     Plaintiff incorporates herein by reference as though fully set forth the allegations in

        paragraphs 1 through 38 of this Complaint.

40.     Timbrook and GMAC are "merchants" within the meaning of the Maryland Consumer

        Protection Act ("CPA"), Comm. Law, §13-101(g), and are subject to all of the CPA's

11

provisions prohibiting unfair or deceptive trade practices including those in Md. Code Ann., Comm. Law, §§13-303 and 13-301.

41.     Unbeknownst to Plaintiff, prior to her purchase of the car from Timbrook, the vehicle had sustained extensive collision and frame damage.  Timbrook had actual knowledge of same at the time it sold Plaintiff the vehicle but it nonetheless misrepresented, concealed and failed to disclose to Plaintiff the material fact that the vehicle had been involved in a significant accident and that the damage had not been fully and properly repaired.

42.     Timbrook's conduct constitutes unfair and deceptive trade practices in violation of the CPA, Md. Comm. Law §§13-303(1) - (2) and §§13-301(1), (2)(i) and (iv) and (3).

43.     In addition, Timbrook's violation of Maryland's Retail Installment Sales Act constitutes an additional violation of the aforesaid sections of the CPA.

44.     As a result of Timbrook's deceptive trade practices in violation of the CPA, Plaintiff agreed to and did purchase the car, Plaintiff paid Timbrook far more for the car than it was worth, Plaintiff incurred finance charges, Plaintiff has been denied the return of funds paid for purchase of the car, and the Plaintiff sustained the other damages and losses set forth above.

WHEREFORE, Plaintiff demands judgment against Timbrook and GMAC, jointly and severally, for compensatory damages in the amount of SEVENTY THOUSAND DOLLARS ($70,000.00), Plaintiff requests that the Court require Timbrook and GMAC to pay the Plaintiff's reasonable counsel fees, plus interest and costs, and provide such other and further relief as the Court deems proper.

.                                    **COUNT SEVEN**
                                   (Fair Credit Reporting Act)

45.    Plaintiff incorporates herein by reference as though fully set forth the allegations in

       paragraphs 1 through 44 of this Complaint.

46.    By letters to each of the three major credit reporting agencies ("CRAs") mailed on

       February 25, 2005, Plaintiff disputed the accuracy and completeness of the manner in

       which GMAC was reporting her account to the three major CRAs (Equifax, Experien and

       TransUnion) based on the matters set forth in this Complaint.  She asked the CRAs to

       investigate.  Plaintiff also wrote a similar letter directly to GMAC, asking GMAC to

       correct the manner in which it was reporting her account.

47.    On information and belief, Plaintiff avers that the three major CRAs subsequently

       notified GMAC that Plaintiff disputed the completeness and accuracy of the information

       it was reporting and requested that GMAC investigate and report back to them on the

       results of its investigation.

48.    The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1601 *et seq*., then required that

       GMAC conduct an investigation with respect to the dispute, review all relevant

       information provided by a CRA and report the results of the investigation to the CRA.  15

       U.S.C. §1681s-2(b)(1).   The FCRA also requires that in the event Defendant determines

       the information it reported was inaccurate or incomplete, it must so notify each CRA to

       whom it reported the erroneous or incomplete  information. *Id.*  The FCRA also requires

       that when a furnisher such as GMAC knows that a consumer such as Plaintiff disputes the

       accuracy of any information it reported to a CRA, it may not furnish the information

                                          13

without reporting that such information is disputed by the consumer. 15 U.S.C. §1681s-2(a)(3).

49.     On information and belief, and pleading in the alternative, Plaintiff avers that GMAC investigated the manner in which it was reporting her account and realized that the account should be deleted from Plaintiff's credit report maintained by all three CRAs; however, in violation of the FCRA, while GMAC so advised TransUnion (which, in fact, did delete all reference to Plaintiff's GMAC account), GMAC intentionally or negligently failed to so notify Equifax and Experien.  In fact, in violation of its duties under 15 U.S.C. §1681s-2(b), GMAC *falsely verified* to Equifax and Experien that the manner in which Plaintiff's account with GMAC was being reported was accurate and complete.  As a result, Equifax and Experience continued to include on the credit reports they provide to their subscribers the false and derogatory information which GMAC reported to them about Plaintiff's account and which GMAC knew was incomplete and inaccurate, causing Plaintiff damage.

50.     On information and belief, Plaintiff pleads alternatively that GMAC intentionally or negligently failed to conduct an investigation, failed to review all relevant information and failed to request that all three CRAs correct the erroneous information it had previously supplied or provide complete information; alternatively, if GMAC conducted an investigation, it learned or consciously avoided learning that the information it had provided to the CRAs was inaccurate and/or incomplete.  On information and belief, Plaintiff avers that GMAC reported to Equifax and Experien that the information it previously had provided to them was accurate, at a time when GMAC knew that this

information was inaccurate and/or incomplete.  GMAC also failed to notify the CRAs

that Plaintiff disputed the accuracy of the information it was reporting, knowing full well

that Plaintiff disputed its accuracy and that it was required to report that Plaintiff disputed

the information it was reporting.

51.     On information and belief, Plaintiff avers that GMAC willfully and intentionally refused

to correct its credit reporting on the Plaintiff or comply with FCRA requirements as part

of a deliberate scheme to tarnish Plaintiff's credit history and force her to make payments

she did not owe.  In the alternative, Plaintiff avers that GMAC's failure to comply with

FCRA requirements was negligent.

52.     As a result of GMAC's violations of the FCRA, Plaintiff sustained the losses and

damages set forth above.

WHEREFORE, Plaintiff demands judgment against GMAC under 15 U.S.C. §§1681n

and 1681o for compensatory damages of FIFTY THOUSAND DOLLARS ($50,000.00), punitive

damages in such amount as the jury shall deem necessary to punish GMAC and to deter it and

others from engaging in similar conduct in the future, minimum statutory damages as provided

for in 15 U.S.C. §1681n, plus interest, costs and reasonable counsel fees.

O'TOOLE, ROTHWELL, NASSAU & STEINBACH

By: _____
    Mark H. Steinbach (Federal Bar No. 26538)
    1350 Connecticut Avenue, N.W.
    Suite 200
    Washington, D.C. 20006
    (202) 775-1550

    Attorneys for Plaintiff


**JURY DEMAND**

Plaintiff demands trial by jury.


_____        _____
                                         Mark H. Steinbach

16